STATE OF CONNECTICUT *v.* TIMOTHY JAMES DURKIN
(8675)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued September 25—decision released December 18, 1990

*Sigmund L. Miller,* with whom, on the brief, was *George P. D'Amico,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard Palombo,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. This appeal arises from a judgment of revocation of probation after a hearing held pursuant to General Statutes § 53a-32.[1] The basic issue to be

---

[1] General Statutes § 53a-32 provides: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . . Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall

resolved is whether the defendant's rights to due process were violated when the court, after the presentation of the state's case in his presence, revoked his probation and sentenced him in his absence. We conclude that, on the facts of this case, his rights were violated.

The facts are not in dispute. The defendant was originally sentenced on January 5, 1989, to a term of five years, execution suspended, with three years probation, following a conviction for possession of narcotics. The special terms of his probation required the defendant to remain drug free, receive drug evaluation and treatment, and to hold a full-time job. He was also bound by the standard conditions of probation which, among other things, required him to keep his probation officer notified of his whereabouts and to request permission before leaving the state. The defendant signed a form indicating that he understood the terms and conditions of his probation.

In order to demonstrate his compliance with the condition of probation that he remain drug free, the defendant had to undergo drug testing at random intervals. On three occasions in the spring and early summer of 1989, the defendant's tests were positive. The defendant was terminated from his required treatment program because of another positive test and his subsequent failure to attend a scheduled appointment at the treatment agency. As a result of these alleged violations of the special conditions of his probation, the

be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

defendant's probation officer obtained a warrant for his arrest, pursuant to General Statutes § 53a-32. After his arrest, the defendant was released on a written promise to appear.

The state presented its case at a violation of probation hearing held on the morning of September 20, 1989. At the close of the state's case, the court continued the hearing until October 11, 1989, at the request of the defendant's counsel so that the counsel could take care of other business. The defendant indicated that he intended to present mitigating evidence at the continued hearing.

The defendant failed to appear at the October 11, 1989 hearing. His counsel stated that between the dates of the first and second hearing the defendant had been sentenced and incarcerated in either North or South Carolina on an unrelated matter. The defendant's counsel also informed the court that his client had another criminal matter pending in Connecticut, and that he believed that the defendant would seek to return to Connecticut under the Interstate Agreement on Detainers (IAD), General Statutes § 54-186.

Following these representations, the state requested that the hearing proceed in the defendant's absence because the defendant had voluntarily left the jurisdiction. The court, however, continued the proceedings for one week to give the parties an opportunity to research applicable law.

At the October 18, 1989 hearing, the defendant's counsel, in the absence of the defendant and without written proof of the defendant's whereabouts for the record, moved to withdraw his representation. He claimed to be unable to present mitigating evidence or otherwise to assist the defendant. According to counsel, the defendant had planned to testify. The court denied the motion to withdraw. The defendant's counsel

then repeated his representation that the defendant was involuntarily absent because he was serving a five year sentence in South Carolina, although he still claimed no knowledge of the exact circumstances surrounding the defendant's presence in South Carolina or his incarceration. The trial court, while not doubting counsel's veracity, noted that "the only thing I have before me of record is that [the defendant is] not here two weeks running."

The state then moved again to proceed in the defendant's absence, noting that it is well settled that criminal trials may proceed without a defendant when the defendant absconds after the trial has begun. The court agreed that it was proper to proceed because it concluded that the defendant's South Carolina arrest and conviction were a result of the defendant's "own conduct and behavior," and that the defendant, by his absence, had elected not to present any evidence. Over defense counsel's objections, the court ordered the defendant's rearrest, terminated his probation and imposed a sentence of five years, to run consecutive to the term imposed by South Carolina.

Following imposition of the sentence, the court continued the matter again to give the defendant's counsel an opportunity to obtain a certified copy of the South Carolina conviction. A final hearing was held on November 20, 1989, during which the certified copy of the South Carolina conviction, dated September 26, 1989, was produced for the record. The Connecticut court reiterated its belief that the defendant left this jurisdiction deliberately and wilfully. The court pointed to a notation on the South Carolina conviction, which read "I request drug counseling if possible. I would like this sentence to be concurrent with any revocation in Connecticut if possible," as an indication that the defendant was well aware of the ramifications of his actions in leaving Connecticut. The defendant's coun-

sel then moved orally to have the judgment opened and a mistrial declared. The trial court refused to rule on these motions.

It is well settled that a probationer has a liberty interest in his conditional freedom that is entitled to the protections of due process. *Black* v. *Romano,* 471 U.S. 606, 611–12, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985); *Gagnon* v. *Scarpelli,* 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *State* v. *Smith,* 207 Conn. 152, 166, 540 A.2d 679 (1988); *State* v. *Baxter,* 19 Conn. App. 304, 310–12, 563 A.2d 721 (1989). At a minimum, due process requirements for revocation of probation include written notice of the claimed violation of probation, disclosure to the probationer of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to cross-examine adverse witnesses in most instances, a neutral hearing body and a written statement as to the evidence and reasons for probation revocation. *State* v. *Baxter,* supra.

It is clear that "a revocation of probation and an order for execution of sentence may be ordered only after a full hearing at which the defendant is afforded his rights to counsel, to cross-examine witnesses and to present evidence in his own behalf. General Statutes § 53a-32; see *Mempa* v. *Rhay,* 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 [1967]." *State* v. *Roberson,* 165 Conn. 73, 81–82, 327 A.2d 556 (1973). Furthermore, Practice Book § 943,[2] which governs the

[2] Practice Book § 943 provides: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of his probation or his conditional discharge or by a written

procedure of revocation hearings, instructs that such proceedings shall be held pursuant to Practice Book §§ 634 and 660. In turn, these latter sections relate to arraignment and the conditions of release of defendants. Thus, under § 943 probationers upon their arrests are given "all of the rights accorded other persons initially charged with a crime"; *State* v. *Baxter,* supra, 311 n.7; including the right to be present at all critical stages of trial and sentencing. See *State* v. *Gonzalez,* 205 Conn. 673, 689, 535 A.2d 345 (1987); *State* v. *Drakeford,* 202 Conn. 75, 79, 519 A.2d 1194 (1987).

The right to be present is especially critical where, as here, the defendant's presence bears a substantial relationship to his opportunity to defend. *State* v. *Simino,* 200 Conn. 113, 125–26, 509 A.2d 1039 (1986). Like other personal rights of constitutional dimension, however, the right to be present is subject to waiver. *Diaz* v. *United States,* 223 U.S. 442, 455–58, 32 S. Ct. 250, 56 L. Ed. 500 (1912); *United States* v. *Fontanez,* 878 F.2d 33, 35 (2d Cir. 1989); *Talton* v. *Warden,* 171 Conn. 378, 384, 370 A.2d 965 (1976). Thus, the controlling issue in this case is whether the defendant knowingly and voluntarily waived his right to be present.

Waiver of the right to be present need not be express, but rather may be inferred from the totality of the defendant's acts and conduct. *State* v. *Gonzalez,* supra. Conduct held to imply waiver includes a defendant's

notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a statement of the alleged violation. All proceedings thereafter shall be in accordance with the provisions of Secs. 634 and 660. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. If the defendant admits the violation or the judicial authority finds from the evidence that he committed the violation, the judicial authority may make any disposition authorized by law."

ant's disruptive behavior at trial; *Illinois* v. *Allen,* 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *State* v. *Gonzalez,* supra; jumping bail; *Taylor* v. *United States,* 414 U.S. 17, 19–20, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973); failure to appear for trial; *United States* v. *Tortora,* 464 F.2d 1202, 1208 (2d Cir.), cert. denied sub nom. *Santora* v. *United States,* 409 U.S. 1063, 93 S. Ct. 554, 34 L. Ed. 2d 516 (1972); deliberate absence from trial once it has begun in his presence; *State* v. *Simino,* supra, 131–32; *State* v. *Parham,* 174 Conn. 500, 505, 391 A.2d 148 (1978); and deliberate absence from a sentencing hearing. *Tyler* v. *Bronson,* 12 Conn. App. 621, 622, 533 A.2d 570 (1987), cert. denied, 207 Conn. 802, 540 A.2d 75 (1988).

The question in this case is whether a defendant in custody in another state can be deemed to have waived his right to be present. The question has been answered in dictum in the negative. See *Diaz* v. *United States,* supra, 455. "[A]n accused who is in custody . . . [is] incapable of waiving the right . . . ." Id. While refusing to fashion this dictum into a per se rule, the Second Circuit Court of Appeals has applied the principle in several more recent cases to hold that the trial court incorrectly inferred voluntary waiver when a defendant was absent due to a subsequent arrest on an unrelated matter. *United States* v. *Fontanez,* supra, 36; *United States* v. *Crutcher,* 405 F.2d 239, 243 (2d Cir. 1968). We find the reasoning of the Second Circuit persuasive on this issue.

*Crutcher* is particularly instructive.[3] In that case, the defendant was arrested in New Jersey on unrelated

[3] In *United States* v. *Crutcher,* 405 F.2d 239 (2d Cir. 1968), the court relied upon not only the constitutional right of a defendant to be present but Rule 43 of the Federal Rules of Criminal Procedure. Our Practice Book § 967 is a derivation of the federal rule; 4 L. Orland, Connecticut Practice Book Annot. (1986) § 967; and provides a defendant with the right to be present at trial.

charges two days before his trial was to begin in New Haven. The defendant gave a false name to the New Jersey authorities, which caused a delay in his return to Connecticut. The jury was impaneled in his absence. Although the government argued on appeal that the defendant voluntarily waived his right to be present by using a false name, the Second Circuit held that the defendant's actions "under the circumstances, could hardly constitute either a knowing or a voluntary waiver" of his right to be present at a critical stage of his trial. *United States* v. *Crutcher,* supra.

The facts in this case present a stronger basis for the conclusion that the defendant was absent involuntarily from the hearing. There is nothing in the record to indicate that the defendant engaged in the sort of deception practiced by the defendant in *Crutcher* to avoid his legal responsibilities. The defendant "bears the burden of justifying his absence from a known proceeding against him." *United States* v. *Sanchez,* 790 F.2d 245, 249 (2d Cir. 1986). Here, the defendant's counsel offered the fact that his client was incarcerated in another state. While the trial court also correctly noted that there was no evidence to explain whether the defendant's absence was intentional or unintentional, in the absence of such evidence to the contrary, the court was not justified in finding waiver. "[A] waiver of a fundamental constitutional right is not to be presumed from a silent record." *State* v. *Shockley,* 188 Conn. 697, 707, 453 A.2d 441 (1982); see also *State* v. *Smith,* 18 Conn. App. 368, 373–74, 558 A.2d 257 (1989). Under these circumstances, we conclude that the trial court was incorrect in finding that the defendant voluntarily waived his right to be present at the violation of probation hearing.[4]

---

[4] The certified conviction from South Carolina showed that the defendant was sentenced to "five years hard labor on the public works of Dillon County." The defendant's counsel later represented that the defendant had

This court may also consider whether the trial court correctly balanced the interest of the state in obtaining an efficient resolution of criminal matters against the defendant's right to due process. The federal courts use a balancing test first enunciated by the Second Circuit Court of Appeals in *United States* v. *Tortora,* supra, 1210. This test requires that the trial court weigh the likelihood that the trial could soon take place with the defendant present against the difficulty of rescheduling, particularly in multiple defendant trials, and other burdens on the prosecution and its witnesses. Id. In *State* v. *Drakeford,* supra, 80, the Connecticut Supreme Court declined to adopt this test verbatim. It did, however, consider the defendant's ability "unilaterally to prevent his case from going forward" within the entire context of the trial. We use the same approach here.

Under these circumstances, the state was in no danger of losing the defendant. He was not only securely in custody in another state, but, according to his attorney, was ready to exercise his rights under Article III of the IAD[5] to return to Connecticut to face other pend-

been presented, the day he appeared in South Carolina, with the choice of pleading guilty and accepting a five year sentence or facing trial and a much longer term. While this was not a fact before the trial court, there was enough on the record to show that this was not a classic case of an unexplained absence from trial, where, it can be presumed, the defendant flees to avoid punishment or to change the course of proceedings in his favor. See, e.g., *United States* v. *Tortora,* 464 F.2d 1202 (2d Cir. 1972).

[5] General Statutes § 54-186 Article III provides in relevant part: "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of the imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

ing criminal charges in the same judicial district in which the revocation hearing was held.

The state was also in little danger of losing its evidence against the defendant, and could have resumed the violation of probation hearing on the defendant's return. The defendant could not move on his own behalf, however, for a speedy resolution of the violation of probation hearing under the IAD because pending violation of probation hearings are not considered "untried indictments, informations, or complaints" for the purposes of Article III. *Carchman* v. *Nash,* 473 U.S. 716, 725, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985). He could so move for a resolution of the pending criminal matter, however, and presumably both matters could have been heard upon his return to Connecticut. In addition, the state could have lodged a detainer against the defendant on the violation of probation charges, pursuant to Article IV of the IAD, which is not affected by the holding in *Carchman.* Id., 727; see *Wheway* v. *Warden,* 215 Conn. 418, 576 A.2d 494 (1990). Thus, the state was, at worst, inconvenienced by the defendant's absence, whereas the defendant lost all opportunity to be heard and present a defense when the court decided to proceed in his absence. On these facts, we hold that the trial court abused its discretion in holding the hearing and sentencing the defendant without the defendant's presence.

Having decided that the trial court should not have continued the hearing in the defendant's absence, our final task is to decide whether this action was harmless. *United States* v. *Fontanez,* supra. The ultimate question thus becomes whether the trial court's erroneous action affected the result of the hearing. *Manning* v. *Michael,* 188 Conn. 607, 611, 452 A.2d 1157 (1982). The state had substantial evidence that the defendant had violated his probation by using drugs. No matter how substantial the state's evidence, how-

ever, the defendant had the right to offer evidence that could result in the revocation or continuance of probation, with enlarged or modified conditions of probation, or the imposition of a lesser sentence than that originally imposed. General Statutes § 53a-32 (b); *State* v. *Roberson,* supra. Where the only evidence in mitigation was to be put forth through the mouth of the defendant, we must conclude that his absence affected the outcome, and that the state has not met its burden of demonstrating that the court's action was "harmless beyond a reasonable doubt." *State* v. *McIver,* 201 Conn. 559, 564, 518 A.2d 1368 (1986).

The judgment of violation of probation and the imposition of the sentence is reversed and the case is remanded for a new hearing.

In this opinion LAVERY, J., concurred.

FOTI, J., dissenting. I must respectfully disagree with the view of the majority. Although I agree that the controlling issue in this case is whether the defendant effectively waived his right to be present at his probation hearing, the facts in this case compel me to conclude that the defendant waived that right by voluntarily leaving Connecticut.

An effective waiver presupposes full knowledge of the right or privilege waived and a knowing or purposeful act done to relinquish it. *State* v. *Ramos,* 201 Conn. 598, 603, 519 A.2d 9 (1986). The question of waiver must be determined by the particular facts and circumstances that surround the case. *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). There is no question that the defendant had full knowledge of his right to be present at the revocation of probation hearing. The only question is whether the court abused its discretion in proceeding to complete the

hearing absent the defendant, having found a waiver of that presence by his voluntarily leaving the state.

As the majority has stated, waiver of the right to be present need not be express, but rather may be inferred from the totality of the defendant's acts and conduct. The issue of determining whether a waiver took place is ultimately factual; *State* v. *Frazier,* 185 Conn. 211, 219, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); but a reviewing court must scrupulously examine the record to ascertain whether such a factual finding of a waiver is supported by substantial evidence. *State* v. *Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983). In considering the validity of a waiver, we must look to the totality of the circumstances surrounding the claimed waiver. *State* v. *Whitaker,* 215 Conn. 739, 760, 578 A.2d 1031 (1990).

Although most individuals have the right to leave Connecticut as they please, the defendant had no such right because he was on probation in this state. The defendant was charged with violating a special condition of his probation—to remain drug free. In addition to that and other special conditions, the defendant, like all others placed on probation, also received general conditions of probation in writing. The defendant indicated to his probation officer that he understood the conditions of his probation, both special and general, and he signed the written conditions of probation.[1] Those written conditions of probation were before the court as a state's exhibit. One of the general conditions prohibited the defendant from leaving the state of Connecticut without permission. The court was also aware that the defendant did not have permission from the probation department to leave the state of Connecticut.

---

[1] The defendant also received a copy of those conditions.

Because the state did not charge the defendant with a violation of that general condition of probation, it was under no burden to prove that the defendant had left the state voluntarily. Conversely, it was the defendant who would have to carry this burden. Because of the defendant's admission that he left Connecticut, he would have to show that his departure was involuntary, such as that effected by a bail bondsman, in order to succeed on a motion for mistrial or continuance. The defendant never claimed that he was forced to leave Connecticut. The trial court, therefore, could have reasonably inferred, as the defendant conceded at oral argument, that he voluntarily left the state.

Under the particular circumstances of this case, his voluntary departure constituted a waiver of his right to be present for the completion of his hearing. The defendant was afforded written notice of the alleged probation violation and a hearing in which he participated. He heard the state's evidence and was given the opportunity to present evidence on his own behalf including his own testimony. He was aware that he was not free to leave the state without his probation officer's approval. He was also aware that his probation revocation hearing was being continued at his request until October 11, 1989, so that he might present his defense. He knew that by entering a plea in South Carolina he would be sentenced and not be able to return to Connecticut to complete his hearing on October 11, 1989. He was not in custody either in Connecticut or in South Carolina prior to the plea.

Although it may be true that the defendant intended to return to Connecticut to complete his hearing when he left,[2] the court was correct in finding that the

[2] The defendant, at his sentencing in South Carolina, requested that his sentence there be imposed to run concurrently with the sentence he would be receiving on his probation revocation hearing. While this was not a fact before the trial court, it shows that the defendant was aware and expected

defendant's statutory and constitutional rights were not violated, because the defendant, by his actions, had waived his right to be present.

The defendant himself created the circumstances that led to his incarceration in South Carolina by voluntarily leaving the state of Connecticut during the pendency of the hearing, knowing this constituted a violation of a general condition of his probation. This is not a case where the defendant was absent because of a subsequent arrest that caused him to be incapable of knowingly and voluntarily waiving his right to be present, but rather one where the defendant's own voluntary act of improperly leaving the state, followed by his voluntary entering of a plea in another state caused him to lose the opportunity to be heard and present a defense in a matter that had already commenced.

Under these circumstances I cannot find, as the majority has found, that the trial court abused its discretion in proceeding to complete the hearing without the defendant's presence.

For the foregoing reasons, I respectfully dissent.

---

that the revocation hearing would be proceeding without his presence. The majority states that "there was enough on the record to show this was not a classic case of an unexplained absence from trial, where, it can be presumed the defendant flees to avoid punishment or to change the course of proceedings in his favor." The only true issue is waiver; the state has never claimed that the defendant fled to avoid prosecution, nor is that a prerequisite to waiver.